UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DEBORAH SCHULTE,

NO. CIV. S-05-1812 FCD JFM

       Plaintiff,

   v.

MEMORANDUM AND ORDER

CITY OF SACRAMENTO, SAMUEL L. JACKSON, THOMAS FRIERY, LYDIA ABREU, WILLIAM P. CARNAZZO, AND BRETT M. WITTER,

       Defendants.

----oo0oo----

    This matter comes before the court on defendants City of Sacramento ("City"), Samuel L. Jackson ("Jackson"), Thomas Friery ("Friery"), Lydia Abreu ("Abreu"), William P. Carnazzo ("Carnazzo"), and Brett M. Witter's ("Witter") motion to dismiss plaintiff's first amended complaint ("complaint") pursuant to

///

///

Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]
Plaintiff seeks leave to amend her first amended complaint
pursuant to Rule 15(a).  For the reasons set forth below,[2]
defendants' motions is GRANTED, and plaintiff's motion is
GRANTED.

**BACKGROUND**[3]

Plaintiff Deborah Schulte ("Schulte") is a licensed attorney
in California.  (Pl.'s 1st Am. Compl. ("FAC"), filed Oct. 20,
2005, ¶ 11).  Schulte began employment with the City on August 9,
1999, where her primary duties were to develop expertise in
municipal finance matters.  (Id. ¶ 10).  In October 2001,
plaintiff left her employment with the City to work with the
State Treasurer's office, but returned to work for the City in
June 2002. (Id.)  Plaintiff worked in the Special Projects
Section, where only the most experienced attorneys who could
handle the most complex matters were assigned.  (Id. ¶ 33).
Throughout the majority of her tenure with the City, plaintiff
was consistently promoted and received excellent performance
evaluations.  (Id. ¶ 27).

During the course of her employment, plaintiff spoke out
against the City complying with an agreement it had executed with
Lennar Communities, Inc., and/or its wholly owned subsidiaries

---

[1]     All further references to a "Rule" are to the Federal
Rules of Civil Procedure.

[2]     Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. Local Rule 78-230(h).

[3]     The facts of this case are taken from plaintiff's
allegations in the complaint.

1   (collectively, "Lennar").  (Id. ¶ 11).  Plaintiff objected to the

2   enforcement of the Memorandum of Understanding ("MOU") between

3   the City and Lennar on the grounds that the MOU required the City

4   to pay Lennar over six million dollars in excess of money Lennar

5   was lawfully entitled to recover.  (Id. ¶¶ 11, 14, 16).  This

6   overpayment would violate state statutory and constitutional

7   laws, as well as federal tax and securities laws.  (Id. ¶ 11).

8   Therefore, as part of her ethical and legal obligations as an

9   attorney, plaintiff had a duty to counsel actions that appeared

10  to be legal and just.  (Id. ¶ 23).  Plaintiff also had a

11  professional duty to urge reconsideration of actions that may be

12  or are illegal to the organization or refer such matter up her

13  chain of command.  (Id.)

14       Plaintiff alleges that, as a result of her speaking out

15  against compliance with the MOU, City Attorney Jackson and her

16  immediate supervisor, Witter, enacted a campaign of retaliation

17  against plaintiff.  (Id. ¶ 29).  Defendants redirected inquiries

18  and assignments that would normally have gone to plaintiff.

19  (Id.)  Defendants began soliciting negative information about

20  plaintiff's performance in other areas of her work.  (Id.)

21  Finally, in July 2004, plaintiff was transferred out of the

22  Special Projects Section to the Litigation Section, where less

23  experienced attorneys handle more common cases.  (Id. ¶ 33).  It

24  was known that the City Attorney considered such a transfer as a

25  demotion because attorneys so transferred would not receive the

26  same consideration for salary adjustments and promotions.  (Id. ¶

27  34).  As such, plaintiff considered this transfer a demotion.

28  (Id.)  The transfer was done in such a manner as to communicate

3

1    to City staff and other individuals that they could no longer

2    have confidence in plaintiff's advice, causing significant injury

3    to plaintiff's professional reputation.  (Id. ¶ 35).  Therefore,

4    plaintiff alleges that she was constructively terminated. (Id. ¶

5    38).

6         Plaintiff brings claims pursuant to 42 U.S.C. § 1983 and 42

7    U.S.C. § 1985 for violations of her First Amendment rights.

8    Plaintiff also claims violations of California Labor Code §

9    1102.5, wrongful termination in violation of public policy,

10   intentional infliction of emotional distress, and violation of

11   Civil Code § 52.1.  On November 9, 2005, defendants filed a

12   motion to dismiss, seeking dismissal of plaintiff's § 1985 claim,

13   intentional infliction of emotional distress claim, and claim for

14   violation of § 52.1.  On December 27, 2005, plaintiff filed a

15   motion to amend her complaint.

16                              **STANDARDS**

17        On a motion to dismiss, the allegations of the complaint

18   must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322

19   (1972).  The court is bound to give plaintiff the benefit of

20   every reasonable inference to be drawn from the "well-pleaded"

21   allegations of the complaint.  Retail Clerks Int'l Ass'n v.

22   Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

23   need not necessarily plead a particular fact if that fact is a

24   reasonable inference from facts properly alleged.  See id.

25        Given that the complaint is construed favorably to the

26   pleader, the court may not dismiss the complaint for failure to

27   state a claim unless it appears beyond a doubt that the plaintiff

28   can prove no set of facts in support of the claim which would

                                  4

1   entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45

2   (1957); <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th

3   Cir. 1986).

4       Nevertheless, it is inappropriate to assume that plaintiff

5   "can prove facts which it has not alleged or that the defendant[]

6   ha[s] violated the . . . laws in ways that have not been

7   alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal.</u>

8   <u>State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  Moreover,

9   the court "need not assume the truth of legal conclusions cast in

10  the form of factual allegations." <u>United States ex rel. Chunie</u>

11  <u>v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

12      In ruling upon a motion to dismiss, the court may consider

13  only the complaint, any exhibits thereto, and matters which may

14  be judicially noticed pursuant to Federal Rule of Evidence 201.

15  <u>See</u> <u>Mir v. Little Co. of Mary Hospital</u>, 844 F.2d 646, 649 (9th

16  Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United</u>

17  <u>States, Inc.</u>, 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

18                              **ANALYSIS**

19  **A.   Intentional Infliction of Emotional Distress**

20      Defendants argue that plaintiff's state tort claim for

21  intentional infliction of emotional distress should be dismissed

22  because plaintiff's complaint does not allege facts sufficient to

23  state a claim.[4]  To succeed on a claim of intentional infliction

24  of emotional distress, plaintiff must demonstrate:

25  _____

26      [4]   Defendants also assert that plaintiff's claim is barred
    for failure to comply with the California Tort Claims Act.

27  Because, as discussed *infra*, the court finds that plaintiff has
    not alleged sufficient facts to state a claim for intentional

28  infliction of emotional distress, the court does not reach the
    merits of this argument.

1   (1) extreme and outrageous conduct by the defendant with the
2   intention of causing, or reckless disregard of the
    probability of causing, emotional distress; (2) the
3   plaintiff's suffering severe or extreme emotional distress;
    and (3) actual and proximate causation of the emotional
    distress by the defendants' outrageous conduct.
4

5   Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).

6   "Outrageous conduct" requires that the conduct must be so extreme

7   "as to exceed all bounds of that usually tolerated in a civilized

8   community."   Id.

9       California courts have held that the question of whether the

10  conduct alleged in the complaint is sufficiently "extreme and

11  outrageous" is generally a factual issue for the jury.  See Angie

12  M. v. Superior Court, 37 Cal. App. 4th 1217, 1226 (1995).

13  However, California courts have also held that "[a] simple

14  pleading of personnel management activity is insufficient to

15  support a claim of intentional infliction of emotional distress,

16  even if improper motivation is alleged."  Janken v. GM Hughes

17  Electronics, 46 Cal. App. 4th 55, 80 (1996).  Personnel

18  management actions include

19      actions such as hiring and firing, job or project
        assignments, office or work station assignments,
20      promotion or demotion, performance evaluations, the
        provision of support, the assignment or nonassignment
21      of supervisory functions, deciding who will and who
        will not attend meetings, [and] deciding who will be
22      laid off.

23  Id. at 64-65.  "Managing personnel is not outrageous conduct

24  beyond the bounds of human decency, but rather conduct essential

25  to the welfare and prosperity of society."  Id. at 80.

26      Defendants contend that the allegedly tortious behavior

27  asserted by plaintiff in her complaint all fall within the ambit

28  of personnel management actions, and therefore, preclude a claim

1   of intentional infliction of emotional distress.  Plaintiff
2   alleges that, as a result of her recommendations concerning the
3   MOU, defendants enacted "a campaign of retaliation."  (FAC ¶ 29).
4   This campaign included a significant decrease in assignments and
5   involvement with public financing and developers.  (Id.)
6   Plaintiff was also excluded from meetings.  (Id.)  Plaintiff's
7   supervisors began soliciting negative information about her
8   performance.  (Id.)  Finally, plaintiff was transferred out of
9   the Special Projects Section and demoted to the Litigation
10  Section, by which she was constructively terminated.  (Id. ¶¶ 33,
11  34, 39).

12      California courts have construed all of the actions alleged
13  by plaintiff as personnel management actions.  See Janken, 46
14  Cal. App. 4th at 64-65 (finding that personnel management actions
15  include "job or project assignments, . . . promotion or
16  demotion, performance evaluations, . . . [and] deciding who will
17  and who will not attend meetings); see also, Heglgeson v. Am.
18  Int'l Group, Inc., 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999)
19  ("Performance reviews, counseling sessions, lay-off decisions,
20  and work assignments are all decisions that businesses make
21  everyday. . . . Even if these decisions were improperly motivated
22  they fall far short of the necessary standard of outrageous
23  conduct beyond all bounds of decency.").  Therefore, plaintiff
24  cannot sustain a claim of intentional infliction of emotional
25  distress based upon these facts alone.

26      Plaintiff fails to address the cases cited by defendants,
27  but instead relies on the older case of Wallis v. Superior
28

1    Court,[5] 160 Cal. App. 3d 1109, 1120 (1984).[6]  Wallis is factually

2    distinguishable from plaintiff's case.  In Wallis, the employer

3    breached its obligation to pay an agreed upon stipend for the

4    plaintiff's agreement not to compete.  Id. at 1112.  The

5    plaintiff brought a claim for intentional infliction of emotional

6    distress, alleging that the employer intentionally abused its

7    position of financial control over the plaintiff by breaching the

8    contract.  Id. at 1120.  In overruling the trial court's

9    demurrer, the court of appeals emphasized that the plaintiff's

10   complaint alleged that the employer knew of the plaintiff's

11   extremely vulnerable position because of his age, lack of other

12   work skills and financial responsibilities, and intended to cause

13   him emotional distress.  Id.  Plaintiff's complaint fails to

14   allege such vulnerability and defendants' knowledge of such

15   vulnerability as in Wallis.

16       Because the factual allegations supporting plaintiff's tort

17   claim describe only personnel management actions by defendants,

18   plaintiff does not plead sufficient facts to state a claim.

19   Thus, defendants' motion to dismiss plaintiff's claim of

20   intentional infliction of emotional distress is GRANTED.

21   /////

22

23       [5]   Wallis was overruled on other grounds by Foley v.
24   Interactive Data Corp., 47 Cal. 3d 654 (1988).

25       [6]   Plaintiff also relies on Monge v. Superior Court, 176
     Cal. App. 3d 503 (1986).  In Monge, the court faced the issue of
26   whether a complaint stated sufficient facts for punitive damages
     in an employment discrimination case.  The case did not address
27   the pleading requirements of an intentional infliction of
     emotional distress claim.  In light of existing state law that is
28   directly on point, the court does not view the analogy made by
     plaintiff as persuasive.

1   **B.    California Civil Code § 52.1**

2        Defendants argue that plaintiff's claims for violations of

3   California Civil Code § 52.1 should be dismissed because

4   plaintiff does not allege facts that rise to the level of

5   "threats, intimidation or coercion" within the meaning of the

6   statute.   Section 52.1 provides that "any individual whose

7   exercise or enjoyment of [constitutional] rights . . . has been

8   interfered with or attempted to be interfered with" by "threats,

9   intimidation, or coercion" may bring a civil action on her own

10  behalf.   Cal. Civ. Code § 52.1.   The section does not provide a

11  definition for the terms "threat," "intimidation," or "coercion,"

12  but does state that "speech alone is not sufficient to support an

13  action."   Id.

14       Plaintiff alleges that defendants "interfered and attempted

15  to interfere" with her First Amendment rights as well as her

16  right to disclose illegal conduct "by threats, intimidation, and

17  coercion."   Specifically, plaintiff alleges that defendants

18  decreased assignments, excluded her from meetings, solicited

19  negative reviews of her and demoted her.   Plaintiff also alleges

20  that defendants' actions negatively affected her professional

21  reputation with colleagues and clients.   These acts do not rise

22  to the level of "threats, intimidation, or coercion" contemplated

23  by § 52.1 and do not support her conclusory allegations.

24       While no California court has interpreted the terms

25  "threats, coercion, or intimidation," "the context of this

26  section makes it clear that the statute is meant to protect

27  against violence or the threat of violence."   Rabkin v. Dean, 856

28  F. Supp. 543, 552 (N.D. Cal. 1994); see also Cole v. Doe 1 thru 2

1   Officers of the Emeryville Police Dept., 387 F. Supp. 2d 1084,

2   1103-04 (N.D. Cal. 2005) (finding sufficient facts alleged where

3   police used law enforcement authority to effectuate a stop,

4   detention, and search without probable cause).  Plaintiff argues

5   that California courts have found facts sufficient to state a

6   claim under § 52.1 where the acts by defendants did not include

7   violence or a threat of violence.  Plaintiff cites to Venegas v.

8   County of Los Angeles, in which the court found sufficient

9   allegations of misconduct under § 52.1 where police officers

10  handcuffed, detained, and arrested plaintiff without probable

11  cause. 32 Cal. 4th 820, 827 (2004).  While the plaintiff did not

12  allege a claim of excessive force against the officers in

13  Venegas, the plaintiff did allege use of physical force, the

14  threat of arrest, and actual arrest.  Id.  Plaintiff's

15  allegations fall far short of this type of conduct.  Plaintiffs'

16  allegations (and any reasonable inferences drawn therefrom) do

17  not provide a factual basis for her claims that defendants

18  interfered or attempted to interfere with her rights through

19  threats, intimidation, or coercion.[7]  Plaintiff does not allege

20  

21      [7]    California state or federal courts have not reached the
    issue of whether allegations of economic coercion are sufficient
22  to state a claim under § 52.1 in any published opinions.
    However, the Massachusetts Supreme Court has interpreted the
23  Massachusetts Civil Rights Act of 1979, upon which § 52.1 was
    modeled, to include economic coercion in certain circumstances.
24  See Buster v. George W. Moore, Inc., 783 N.E.2d 399, 410 (Mass.
    2003) (dismissing claim for failure to allege sufficient facts).

25      [T]he rule of deference to another state's
        interpretation of a statute that provided a model for a
26      California state establishes only a presumption of
        legislative intent.  Even when the presumption properly
27      operates, it does not compel the adoption of the
        judicial construction of the other jurisdiction's
28      statute.

                                              (continued...)

                                10

1  that defendants made any threats, express or implied, subjected
2  her to any physical confrontations, or used any actual force.
3  Therefore, defendants' motion to dismiss plaintiff's § 52.1 claim
4  is GRANTED.

5  **C.    42 U.S.C. § 1985 Claim**

6      Plaintiff does not oppose defendants' motion to dismiss her
7  claims brought under 42 U.S.C. § 1985.  Therefore, defendants'
8  motion to dismiss is GRANTED.

9  **D.    Leave to Amend**

10     Plaintiff seeks leave to amend her complaint to allege a
11  conspiracy claim under 42 U.S.C. § 1983.  Pursuant to Rule 15(a),
12  "leave [to amend] is to be freely given when justice so
13  requires."  "[L]eave to amend should be granted unless amendment
14  would cause prejudice to the opposing party, is sought in bad
15  faith, is futile, or creates undue delay."  Martinez v. Newport
16  Beach, 125 F.3d 777, 785 (9th Cir. 1997).

17     Defendants argue that it would be futile to allege a
18  conspiracy claim under § 1983 because the intra-corporate
19  conspiracy doctrine precludes such a claim in this case.  The
20  intra-corporate conspiracy doctrine bars individual government
21  employees of a single entity from forming a conspiracy with one
22  another.  Portman v. County of Santa Clara, 995 F.2d 898, 910
23  (9th Cir. 1993).  Federal circuits have split on whether the
24  doctrine applies to civil rights claims, and the Ninth Circuit

25

26

27  [7](...continued)
   Jones v. Kmart Corp., 17 Cal. 4th 329, 337 (1998) (internal
   quotations omitted).  In the absence of any California state or
28  federal authority and any evidence of legislative intent to
   include such conduct in the purview of § 52.1, the court does not
   broaden the scope of the statute to include such claims.

11

1   has declined to address the issue.  Id.  There is, however, some

2   legal authority holding that the intra-corporate conspiracy

3   doctrine is inapplicable to civil rights claims.  Id.  Thus, the

4   doctrine does not automatically bar plaintiff's § 1983 conspiracy

5   claim.  Further, circuits that have adopted the intra-corporate

6   conspiracy doctrine have also recognized that there are

7   exceptions to the doctrine.  Dickerson v. Alachua County Comm'n,

8   200 F.3d 761, 769-70 (11th Cir. 2000).  Because plaintiff may

9   plead facts that fit into one of these exceptions, amendment of

10  plaintiff's complaint to add a conspiracy claim is not futile.

11      Defendants also argue that plaintiff's claims center around

12  her allegations that the MOU was illegal, and that plaintiff is

13  precluded from making this "bald assertion."  Defendants contend

14  that, because of this, plaintiff's conspiracy claims are futile

15  and plaintiff's First Amendment violations should be dismissed.

16  As an initial matter, defendants did not raise this argument in

17  their motion to dismiss plaintiff's complaint.  Therefore, the

18  court does not consider this argument as it applies to

19  plaintiff's claims of First Amendment violations.  Further,

20  plaintiff alleges sufficient facts to substantiate her claims

21  that the MOU was illegal.  Defendants' argument that the

22  agreement's legality cannot be challenged because it was

23  authorized and adopted pursuant to the City's plenary and

24  exclusive power does not preclude plaintiff's allegations that

25  the content of the agreement was illegal under state and federal

26  laws.  Therefore, amendment of plaintiff's complaint is not

27  futile.

28  /////

12

1   Finally, defendants argue that plaintiff does not allege
2   sufficient facts to state a claim for a § 1983 conspiracy in her
3   proposed complaint.  This argument is more appropriately brought
4   on a motion to dismiss, not as an opposition to a motion to
5   amend.  Given that plaintiff has alleged at least some facts
6   giving rise to a conspiracy claim in her proposed complaint, the
7   court cannot find that the addition of such a claim would be
8   futile.  Therefore, plaintiff's motion to amend her complaint is
9   GRANTED.

10                          **CONCLUSION**

11       For the foregoing reasons, defendants' motion is GRANTED.
12   Plaintiff's motion to amend her first amended complaint is
13   GRANTED to add only the claim for conspiracy under 42 U.S.C. §
14   1983.  Plaintiff is granted fifteen (15) days from the date of
15   this order to file a second amended complaint in accordance with
16   this order.  Defendants are granted thirty (30) days from the
17   date of service of plaintiff's second amended complaint to file a
18   response thereto.

19       IT IS SO ORDERED.
20   DATED: February 9, 2006

21                       /s/ Frank C. Damrell Jr.
                         FRANK C. DAMRELL, Jr.
22                       UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

                              13